## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| Elaine L Chao, Secretary,<br>United States Department of Labor, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. RDB 03-3409 |
| Self Pride, Inc. and Barbara A. Robinson, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

The Secretary of the United States Department of Labor brought the instant action against Defendants Self Pride, Inc. and Barbara A. Robinson alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201, *et seq.*  Self Pride, Inc. is a Maryland nonprofit corporation which operates eight community living facilities in the City of Baltimore.  Defendant Barbara A. Robinson is the president, executive director and chief executive officer of Self Pride.  Self Pride is primarily engaged in the care of the mentally ill, mentally retarded and/or developmentally disabled persons who reside in the community living centers.  Plaintiff alleges that Defendants violated 29 U.S.C. § 207(a)(1) ("overtime provision") of the FLSA by failing to compensate employees for overtime wages.  In addition, Plaintiff alleges that Defendants violated 29 U.S.C. § 211(c) ("record-keeping provision") by failing to make, keep and preserve adequate and accurate records regarding employee wages, hours, and other conditions of employment.

Pending before the Court is Plaintiff's Motion for Partial Summary Judgment whereupon

Plaintiff seeks summary judgment as to the following five issues: (1) Defendants' liability for violating wage provisions in 29 U.S.C. § 207(a); (2) Defendants' liability for violating record-keeping provisions of FLSA, 29 U.S.C. § 211(c); (3) whether Defendants' repeated violations of FLSA were willful; (4) whether Plaintiff is entitled to liquidated damages under 29 U.S.C. § 216(b); and (5) whether Defendant Barbara Robinson is an employer under the definition set forth at 29 U.S.C. § 203(a).[1]  The issues have been fully briefed, and the Court conducted a lengthy hearing on Plaintiff's Motion on June 2, 2005.  For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment will be granted in part, and denied in part.

## I.      Background

Self Pride is headquartered in Baltimore City, Maryland.  The nonprofit organization operates the eight community living facilities in various locations throughout the City of Baltimore.  At these facilities, Self Pride employees provide intensive 24-hour residential care for developmentally disabled residents, most of whom are severely mentally retarded and physically disabled.  (B. Robinson Dep. at 30.)  Because the residents are largely dependent upon Self Pride staff for basic care, such as diaper changing and bed rotation, employees are required to check the residents every two hours.  (*See* Carr Dep. at 50.)

The bulk of the care for Self Pride residents is provided by Self Pride workers designated as Community Living Assistants ("CLAs").  Throughout the relevant time period, CLA's were paid at a

---

[1]The Plaintiff's four page First Amended Complaint is essentially a one-count complaint in which the Plaintiff seeks injunctive relief for any continued violations of FLSA, as well as damages.  The First Amended Complaint specified a time period of November 20, 1999 through November 24, 2004.

rate of between $6.00 and $6.50 per hour.  (J. Robinson Dep. at 101.)  From November 1999 through July of 2003,[2] certain CLA's worked a continuous shift from 8 a.m. on Saturday to 8 a.m. on Monday.  (B. Robinson Dep. at 71-72.)  Despite the fact that employees worked for 48 hours, the employees were compensated only for 40 hours.  (B. Robinson Dep. at 144; Def.'s Resp. to Pl.'s Interrogatories No. 8; *see, e.g.,* T. Regustus Decl. ¶ 3; A. Ashburne-Hines Decl. ¶ 3; B. Williams Decl. ¶ 3; C. Lowery Decl. ¶ 3.)  According to Self Pride, the CLA's were not paid for two four-hour periods because the employees received a four-hour break on Saturday and Sunday.  (B. Robinson Dep. at 73.)

However, employees were often required to work during these "breaks."  Self Pride's operating policies prohibited an employee from taking her break if no other employee was on duty to monitor the residents.  (B. Robinson Dep. at 92.)  Despite this policy, CLA's were often left to work the weekend shifts alone.  (S. Faulkner Decl. ¶ 5; S. Jones Decl. ¶ 5; S. Brown Decl. ¶ 5; A. Jones Decl. ¶ 5; C. Keith Decl. ¶ 5; N. Smith Decl.  ¶ 5; A. Black Decl. ¶ 4; C. Hawes Decl. ¶ 4; D. Jamerson Decl. ¶ 5; E. Winder Decl. ¶ 5; L. Cooper Decl. ¶ 4; T. Johnson Decl. ¶ 5; C. Giles Decl. ¶

---

[2]In her Affidavit in opposition to Plaintiff's Motion for Partial Summary Judgment, Defendant Barbara Robinson avers that the weekend sleep overtime practice "was ended in September of 2002" . . . yet she acknowledges that there were "a few occasions after 2002, that employees worked over the weekend and slept at a facility." (B. Robinson Aff. § III ¶ 11.)  In her deposition, Robinson suggested that the practice continued until July of 2003.  (*See* B. Robinson Dep. at 71, 72, 74, 144.)  Although this disparity raises a factual dispute as to the duration of the prohibited practice, Plaintiff has acknowledged the existence of that dispute, and Plaintiff is correct to point out that the dispute will be resolved through the trial on damages.  Plaintiff's instant Motion only pertains to Defendants' liability for violating the FLSA overtime provisions.  Based upon the undisputed evidence, it is clear that a violation occurred.  The precise duration of that violation–while relevant to damages–is not material to the liability determination.

5; M. McIntire Decl. ¶ 5; A. Allen Decl. ¶ 5; J. Scott Decl. ¶ 5; N. Watkins Decl. ¶ 5; T. Williams

Decl. ¶ 4; L. Burroughs Decl. ¶ 5; S. Clark Decl. ¶ 4; W. Reese Decl. ¶ 3; L. McCoy Decl. ¶ 4; C.

Lowery Decl. ¶ 5; T. Regustus Decl. ¶ 5.)  As a result, the CLA's could not take a break, because the

residents required constant monitoring and periodic care.  (*Id.*)  In addition, even when two employees

were working, employee breaks were often interrupted because the "off duty" CLA was needed to

assist with the care of the residents.  (B. Williams Decl. ¶ 4; L McKoy Decl. ¶ 4; T. Ray Decl. ¶ 7; N.

Watkins Decl. ¶ 5; B. Trapp Decl. ¶ 4.)  Additionally, Self Pride managers instructed some employees

that they were not permitted to leave the facilities during the breaks.  (L. McKoy Decl. ¶ 5; S. Faulkner

Decl. ¶ 5; N. Smith Decl. ¶ 6; J. Scott Decl. ¶ 6.)  Those employees who were permitted to leave were

practically prohibited from doing so because of a lack of public transportation from the sites.  (N.

Skinner Decl. ¶ 6; T. Ray Decl. ¶ 4; S. Faulkner Decl. ¶ 5; A. Coxson Decl. ¶ 4.)

However, the four-hour break periods were deducted from the employees' wages regardless

of whether the employee actually took the break.  (B. Robinson Dep. at 95.)  This was true even when

an employee indicated on her time sheets that she was unable to take her break.  (Sliwka Decl. ¶ 10.)

Employees were instructed to note the four-hour break on their time sheets without regard to whether

they were able to take the break.  (C. Jackson Dep. at 19-20; N. Skinner Decl. ¶ 5; N. Smith Decl. ¶

5; N. Smith Decl. ¶ 5; T. Ray Decl. ¶ 5; A. Allen Decl. ¶ 5; W. Reese Decl. ¶ 5; A. Coxson Decl. ¶

4.)  On at least one occasion, a Self Pride manager recorded a break on an employee's time sheet

where the employee did not receive such a break.  (T. Ray Decl. ¶ 5.)

Under Self Pride's operating procedures, CLA's were required to record the number of hours

which they worked on a daily basis on a time sheet.  (J. Robinson Dep. at 15.)  At the conclusion of the

pay period, the CLA submitted the time sheets to the house manager, who acted as the CLA's immediate supervisor.  (Turner Dep. at 31-33.)  The house managers would then verify the accuracy of the time sheets and forward the corrected time sheets to Adolphus Carr, Self Pride's program director. (*Id.*)  Carr would review the time sheets and make various adjustments thereto.  (Carr Dep. at 85.) Carr often wrote his initials, "AC," next to the adjustment before ultimately signing his name on the bottom of each time sheet to signify his approval thereof. (L. Pointer Dep. at 44-45.)

Most commonly, Carr would reduce the number of hours on an employee's time sheets for various reasons.  For example, Carr would "dock" an employee's time by one hour for each hour on which the employee failed to call Self Pride's administrative office to confirm that the employee was at work.  (Turner Dep. at 18; Pointer Dep. at 76; Jackson Dep. at 21; T. Regustus Decl. ¶ 7; B. Williams Decl. ¶ 6; C. Lowery Decl. ¶ 7; E. Winder Decl. ¶ 7; M. Wilson Decl. ¶ 7; N. Watkins Decl. ¶ 7; N. Smith Decl. ¶ 8; S. Jones Decl. ¶ 6; T. Williams Decl. ¶ 6; S. Clark Decl. ¶ 6; C. Giles Decl. ¶ 7; C. Hawes Decl. ¶ 6; F. Henson Decl. ¶ 4; A. Allen Decl. ¶ 7; B. Trapp Decl. ¶ 6; C. Keith Decl. ¶ 7; J. Scott Decl. ¶ 9; L. McRorey Decl. ¶ 6; N. Skinner Decl. ¶ 7; T. Ray Decl. ¶ 10.)  Plaintiff has produced numerous examples of actual employee time sheets on which an employee's time was reduced for the employee's failure to call in.  (*See, e.g.* Pl.'s Mem. Supp. Summ. J. Ex. 605 at 03250, 03253 (reducing employee's time by ten hours noting "did not call in"); Ex. 619 at 00054 (reducing employee's time by two hours noting "did not call in"); Ex. 635 at Pointer 2).  In addition, Carr "double docked" employees for lateness.  For example, on August 25, 2001, employee Nicole Smith was docked six hours for being three hours late.  (Pl.'s Mem. Supp. Summ. J. Ex. 607 at 02701.)  There are many other examples of this practice in the record.  (*See, e.g.,* Pl.'s Mem. Supp. Summ. J. Ex. 607

at 02707 (docking two hours for one hour of lateness); Ex. 600 at 02331 (docking an hour for one-half-hour lateness); Ex. 601 at 01295 (same)).  Furthermore, the submissions evince instances in which Carr reduced the total number of hours credited to an employee without explanation.  From the record, it appears that most of these unexplained reductions occurred where the employee noted that he or she was waiting for a van to pick up the residents to transport them to another facility.  (*See, e.g.,* Pl.'s Mem. Supp. Summ. J. Ex. 619 at 00048 (failing to credit employee for hour recorded where employee noted "bus came after 9 a.m."); Ex. 605 at 03253 (failing to credit employee for two hours where employee noted "van was late")).  Finally, the record contains examples of instances when Self Pride rounded the hours recorded by the employees down to the nearest hour.  (Pl.'s Mem. Supp. Summ. J. Ex. 600 at 02319; Ex. 638 at 00769; Ex. 606 at 03045).  As to all of the above matters, there has been no evidence offered the Defendants to remotely raise any issues of material fact.

Once Carr signed off on the employee time sheets, the documents were submitted to Barbara Robinson for final approval.  According to Robinson, "[n]o time was ever docked or reduced from an employee's timesheet without the employee having an opportunity to meet with [Robinson] to discuss his or her timesheets."  (B. Robinson Aff. § III ¶ 7.)  In addition to overseeing employee hours, Robinson was responsible for hiring, disciplining, and training of employees.  (B. Robinson Dep. at 19, 20, 24-25.)  Robinson helped to develop the work schedules for all employees, had the final say as to the rate of pay, and was responsible for determining whether an employee should be terminated.  (*Id.* at 191; J. Robinson Dep. at 95-96.)

The United States Department of Labor twice investigated Self Pride's employment practices to determine the organization's level of compliance with, *inter alia,* the FLSA.  The first such

6

investigation occurred in August of 1998 when Investigator James Kessler of the Baltimore District

Office of the Wage and Hour Division of the Employment Standards Administration of the United

States Department of Labor was assigned to complete an investigation of Self Pride.  (Kessler Decl. ¶¶

2-3.)  In the course of that investigation, Kessler found that Self Pride's practice of requiring weekend

workers to work 48-hour shifts while paying them for 40-hours violated the overtime provisions of the

FLSA.  (Kessler Dec.¶¶ 4-8.)  He claims that he informed Self Pride executives of these findings at a

September 30, 1998 meeting. (*Id.* at  ¶ 9.)  Defendants acknowledge that Self Pride knew about

Kessler's investigation, however, the company denies that Kessler ever informed company executives

of his findings or of any alleged violations of the FLSA by Self Pride.  (B. Robinson Aff. § III  ¶ 1.)

The second investigation of Self Pride was launched in September of 2001, when John Sliwka,

a United States Labor Department investigator, was assigned to conduct an investigation of the

company.  (Sliwka Decl. ¶ 2.)  Sliwka found that Self Pride was continuing to violate FLSA overtime

provisions by paying weekend workers for 40 hours while requiring them to work 48 hours.  (*Id.* at ¶¶

97-104.)  On March 6, 2002, Sliwka held a meeting with Barbara Robinson in which he informed her

of these violations.  (*Id.* at 4-6.)  Barbara Robinson acknowledges that Sliwka informed her that Self

Pride was violating overtime provisions of the FLSA.  (B. Robinson Aff. § III ¶ 2.)  However, she

contends that he never "discussed specifics."  (*Id.*)        After unsuccessful attempts at resolving the

dispute with Self Pride, Plaintiff filed suit in this Court on December 1, 2003, seeking injunctive relief,

back wages, and liquidated damages.  Plaintiff filed the instant Motion for Partial Summary Judgment

on February 15, 2005.  In response, Defendants filed an Opposition and Motion to Strike.

Defendants' main argument in support of its Motion to Strike, and in opposition to Plaintiff's Motion,

was that all of the declarations, deposition transcript excerpts and exhibits should be stricken from the record for various deficiencies.  The Court denied Defendants' Motion to Strike at the June 2, 2005 hearing, finding no merit in Defendants' challenge to the sufficiency of the exhibits.

## II.   <u>Standard of Review</u>

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion,"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must bring forth evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact."  *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-247 (4th Cir. 2005) (citing *Pine Ridge*

*Coal Co. v. Local 8377, UMW.,* 187 F.3d 415, 422 (4ᵗʰ Cir. 1999)).  Rule 56(e) also requires that

"affidavits submitted by the party defending against a summary judgment motion contain specific facts,

admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for

trial.'"  *Id.* (quoting 10B Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 3d § 2740, at

399 (1998)).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case

is not sufficient to preclude an order granting summary judgment.  *Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact

through mere speculation or compilation of inferences."  *Shin v. Shalala,* 166 F. Supp. 2d 373, 375

(D. Md.  2001) (citations omitted).  Furthermore, a party cannot create a genuine issue of fact through

mere assertions.  *Abcor Corp. v. AM Int'l, Inc.,* 916 F.2d 924, 929 (4ᵗʰ Cir. 1990).  Rather, to resist

summary judgment, courts require that the opposing party adduce "specific, nonspeculative evidence. .

. ." *See, e.g., Bouchat v. Balt. Ravens Football Club*, 346 F.3d 514, 526 (4th Cir. 2003).  Indeed,

this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going

to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-*

*Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

**III.   Analysis**

In support of her Motion, Plaintiff contends that there is no genuine issue of material fact as to

any of the five areas:  (1) Defendants' liability for violating wage provisions in 29 U.S.C. § 207(a); (2)

Defendants' liability for violating record-keeping provisions of FLSA, 29 U.S.C. § 211(c); (3) whether

Defendants' repeated violations of FLSA were willful; (4) whether the affected employees are entitled

to liquidated damages under 29 U.S.C. § 216(b); and (5) whether Defendant Barbara Robinson is an

employer under the definition set forth at 29 U.S.C. § 203(a)**.**  Plaintiff has not moved for summary judgment as to the amount of damages, as Plaintiff concedes that the amount of damages should be determined at trial.  The Court will first examine Defendants' liability for overtime and record-keeping violations under the FLSA, and will then examine each of the three additional areas on which summary judgment is sought, in turn.

**A.       Defendants' Liability for Wage and Record-Keeping Violations of the FLSA**

Congress enacted the Fair Labor Standards Act in 1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . . .  Pub. L. No. 75-718, 52 Stat. 1060 (1938) (codified as amended at 29 U.S.C. §§ 201 *et seq.*).  To this end, the FLSA generally requires employers to compensate employees for all of the hours worked, at a rate that is not less than the federal minimum wage rate. *See* 29 U.S.C. § 206(a)(1).  In addition, the FLSA provides that employers must compensate employees at "a rate not less than one and one-half times" the employee's regular hourly rate" for any time the employee is required to work in excess of a 40-hour workweek.  29 U.S.C. § 207(a). Because compliance with FLSA is impossible without certainty as to the number of hours employees actually work, the FLSA requires that employers "make, keep and preserve" records of wages, hours, and "other conditions and practices of employment . . . ."  29 U.S.C. § 211(c); 29 C.F.R. § 516.2(7)- (9).  Any employer who violates Sections 206 or 207 of the FLSA is liable to the affected employees for unpaid wages and liquidated damages.  29 U.S.C. § 216(b).  Injunctive relief may also be ordered against an employer who violates any provision of the FLSA.  29 U.S.C. § 217.

**1.       "Face of the Record" Violations of FLSA**

The undisputed record before this Court reveals numerous violations of the FLSA by Self Pride.  As previously detailed, Plaintiff has submitted actual employee time sheets which indicate that Adolphus Carr, and possibly other Self Pride managers, routinely altered employee records to reduce the total number of hours worked.  Specifically, Self Pride "double-docked" employees for lateness; reduced employee hours for failing to call in; failed to pay employees for waiting for the van to pick up the residents; rounded employee hours down to the nearest hour; and made other unexplained deletions to employee time sheets.  (*See* discussion *supra* Part I at 5-6.)   Because these actions resulted in a failure to pay the employees for earned wages, the acts constitute violations of Section 206(a)(1) of the FLSA. In addition, the Court has noted several instances in which an employee recorded more than 40 hours in a given workweek and Self Pride's deductions reduced the employee's time below 40 hours. (*See, e.g.,* Pl.'s Mem. Supp. Summ. J. Ex. 619 at 00048 (hours reduced from 41 to 40); Ex. 600 at 06118 (hours reduced from 41 to 38)).  This practice deprives employees of overtime pay in violation of Section 207(a).  Furthermore, all of the deletions and other alterations to employee time sheets by Self Pride managers constitute violations of the record-keeping requirements set forth in Section 29 U.S.C. § 211(c), and in 29 C.F.R. § 516.2(7)-(9).  *See Reich v. Petroleum Sales, Inc.,* 30 F.3d 654, 656 (6th Cir. 1994) (recognizing that employer's reduction of employee hours on time sheets constitutes violation of FLSA record-keeping provisions); *Donovan v. White Beauty View, Inc.,* 556 F. Supp. 414 (M.D. PA 1982)(recognizing that manipulation of records to reduce employee hours violated FLSA).   Finally, Defendants' practice of rounding down employee hours constitutes a violation of the wage and record-keeping provisions of the FLSA.  The applicable regulations permit rounding down to the nearest five minutes of one-tenth of or quarter of an hour if it averages out so that employees are

fully compensated for time actually worked.  29 C.F.R. § 785.48.  However, there is nothing before

the Court that establishes that Defendants compensated employees for the time which was deleted in

Self Pride's "rounding down" practice.  Thus, the rounding process violates the FLSA.  *See* 29 C.F.R.

§ 785.48.

Defendants' only response to the voluminous evidence of the blatant violations of the FLSA

consisted of two conclusory denials.  First, Barbara Robinson declared that "[n]o time was ever

docked or reduced from an employee's timesheet without the employee having an opportunity to meet

with [Robinson] to discuss his or her timesheets"  (B. Robinson Aff. § III ¶ 7).  Second, Adolphus Carr

averred that "[o]n the occasions when adjustments had to be made to timesheets, they were made after

I reviewed the sign-in sheets and other records and after I talked to the employees and confirmed the

actual time they worked."  (Carr. Aff. § III ¶ 6.)  Preliminarily, Carr's denial does not address his

practice of "double-docking" and deleting time from employee records for various reasons unrelated to

the "actual time [the employees] worked" which are apparent from the Self Pride time sheets.

Furthermore, both statements suggest that Self Pride employees agreed to the otherwise impermissible

hour reductions. However, as Judge Nickerson of this Court recently noted, "FLSA rights cannot be

abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and

thwart the legislative policies it was designed to effectuate."  *Rogers v. Savings First Mortgage, LLC,*

362 F. Supp. 2d 624, 629 (D. Md. 2005) (quoting *Barrentine v. Arkansas-Best Freight System,*

*Inc.,* 450 U.S. 728, 740 (1981)).

### 2.     <u>Violations Limited to Weekend Employees</u>

In addition to the "face-of-the-record" violations discussed above, Plaintiff alleges that Self

Pride violated the overtime provisions of the FLSA by requiring CLA's to work weekend shifts of 48-hours while the employees were only paid for 40 hours. In response to this charge, Defendants contend that the four-hour periods were breaks which were afforded to the CLA's, and which were therefore not subject to FLSA.[3]

While the FLSA define "work time," as opposed to "break time," the Supreme Court has described work as "meaning physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598 (1944). The Court has specifically recognized that work includes standby or waiting time. *Armour & Co. v. Wantock,* 323 U.S. 126, 133 (1944). "The critical question, the Court has suggested, is 'whether time is spent predominantly for the employer's benefit or for the employee's.'" *Roy v. County of Lexington, South Carolina,* 141 F.3d 533, 544 (4th Cir. 1998) (quoting *Armour & Co.,* 323 U.S. at 133). "*Time spent predominantly for the employer's benefit* during a period, although designated as a lunch period or under any other designation, nevertheless *constitutes working time* compensable under the provisions of the Fair Labor Standards Act." *Id.* (quoting *F.W. Stock & Sons, Inc. v. Thompson,* 194 F.2d 493, 496 (6th Cir.1952)) (emphasis original). Similarly, under the applicable regulations, "off duty" time is compensable unless: (1) the employee is completely relieved from duty;

---

[3]Plaintiff devoted much of her initial Memorandum in Support of her Motion to the argument that the four-hour periods are not subject to the "sleep time" exemptions set forth at 29 C.F.R. § 785.22. However, during the June 2, 2005 hearing before this Court, Defendants clarified that they are not contending that the four-hour period was a sleep break. Rather, Defendants clarified, the period was merely a work break. Therefore, the Court will only address the arguments pertaining to whether the four-hour period constituted a valid non-compensable break under the FLSA.

and (2) the breaks are

long enough to enable the employee to use the time effectively for her own purposes.  29 C.F.R. §

785.16(a).

    The undisputed evidence before the Court demonstrates that the four-hour periods,

characterized as "breaks" by Self Pride, were indeed primarily for Self Pride's benefit.  Self Pride has

admitted that employees were not permitted to take breaks if no other staff person was present to

monitor the residents, and that the employees could not leave if the employee was the sole person on

duty.  (B. Robinson Dep. at 92; J. Turner Dep. at 22.)  Several employees declared that they

complained to Self Pride's management about being left alone on their shift, to no avail.  (Cooper ¶ 9;

T. Johnson ¶ 10; C. Hawes ¶ 11; M. McIntire ¶ 14; W. Reese ¶ 11).  In addition, employees averred

that they worked through the "breaks" because they were the only worker present in the facilities.

(*See, e.g.,* N. Skinner ¶ 4; C. Lowery ¶ 5; C. Keith ¶ 5; C. Giles ¶ 5; E. Wider ¶ 4; S. Clark ¶ 4; T.

Williams ¶ 4; A. Black ¶ 2; S. Brown ¶ 5.)  Additionally, employees stated that, when they were

provided with breaks, the breaks were often interrupted to assist with the care of the residents.  (B.

Williams Decl. ¶ 4; L McKoy Decl. ¶ 4; T. Ray Decl. ¶ 7; N. Watkins Decl. ¶ 5; B. Trapp Decl. ¶ 4.)

    Furthermore, the Self Pride employees were not "off duty" because they were not free to leave

the premises during the four-hour periods.  In general, the fact that an employer gives an employee

permission to leave the premises on a break does not render the time "break time" if it is not practically

feasible for an employee to leave.  *Brock v. DeWitt,* 633 F. Supp. 892 (W.D. Mo. 1986) (holding that

restaurant employees required to "wait" before being called to work should have been compensated

14

because wait time was primarily for the benefit of the employer);  *see also Mireles v. Frio Foods,* 899

F.2d 1407, 1411-1412 (5th Cir. 1990) (waiting times compensable); *Aeromotive Metal Products,*

*Inc. v. Wirtz,* 312 F.2d 728, 729 (9th Cir. 1963) (break compensable where plant was located in

industrial section of town and nearest commercial area and employees' homes not accessible during

break); *Mitchell v. Turner,* 286 F.2d 104, 105 (5th Cir. 1960) (breaks compensable where most

employees lived too far from plant to go home during breaks); *Goldberg v. Willmark Service System,*

*Inc.,* 215 F. Supp. 577 (D. Minn. 1961), *aff'd.,* 317 F.2d 486 (8th Cir. 1963) (periods of "free time"

given to investigative shoppers were compensable).   In this case, Self Pride managers instructed some

employees that they were not permitted to leave the facilities during the breaks.  (L. McKoy Decl. ¶ 5;

S. Faulkner Decl. ¶ 5; N. Smith Decl. ¶ 6; J. Scott Decl. ¶ 6.)  Those employees who were permitted

to leave were practically prohibited from doing so because of a lack of public transportation from the

sites.  (N. Skinner Decl. ¶ 6; T. Ray Decl. ¶ 4; S. Faulkner Decl. ¶ 5; A. Coxson Decl. ¶ 4.)

  For its part, Self Pride made no effort to ensure that employees actually took the breaks before

deducting the time from employee wages.  Barbara Robinson acknowledged that Self Pride had no

system in place to monitor whether employees actually took the four-hour breaks.  (B. Robinson Dep.

at 83.)  Nonetheless, the four-hour break periods were deducted from the employees' wages

regardless of whether the employee actually took the break.  (B. Robinson Dep. at 95.)  This is true

even when employees indicated on their time sheets that they were unable to take any breaks.  (Sliwka

Decl. ¶ 10.)  In fact, in some instances, employees were instructed to note the four-hour break on their

time sheets without regard to whether they were able to take the break.  (C. Jackson Dep. at 19-20;

N. Skinner Decl. ¶ 5; N. Smith Decl. ¶ 5; N. Smith Decl. ¶ 5; T. Ray Decl. ¶ 5; A. Allen Decl. ¶ 5; W.

Reese Decl. ¶ 5; A. Coxson Decl. ¶ 4.)  On at least one occasion, a Self Pride manager recorded a break on an employee's time sheet where the employee did not receive such a break.  (T. Ray Decl. ¶ 5.)

In an attempt to undermine the evidence of Self Pride's violation of the overtime provisions of the FLSA, Defendants again offered only blanket denials by Barbara Robinson and Adolphus Carr. Barbara Robinson simply denied employees were ever required to work the weekend shift alone.  (B. Robinson Aff. § III ¶ 8) ("There were no situations as described by many of the employees where an employee had to work a weekend shift alone.")  Similarly, Adolphus Carr denied the staffing shortages and other issues preventing employees from taking breaks.  (*See* Carr Aff. § III ¶¶ 1-6.)  Both Carr and Robinson offered essentially the following explanation as to how they know the employees' testimony concerning weekend staffing shortages to be false:

> Pursuant to [Maryland] State regulations and requirements, [Self Pride] was required to have proper staffing . . . Self Pride, Inc. is regulated by two State agencies."  The Department of Licensing as well as the Department of Health sent inspectors and investigators into the facilities on a frequent basis.  I would estimate that those persons went into the facilities not less than 10 times per month . . . At no time were the licenses of Self Pride, Inc. ever revoked for the kinds of violations that the employees have put into their declarations.  At no time were any such complaints made to the State investigators or auditors and reported to me.

(B. Robinson Aff. § III ¶ 8; Carr Aff. § III ¶ 3.)  Even ignoring the obvious hearsay and other reliability issues posed by this claim, the *representations* as to the absence of sanctions resulting from Maryland inspections on regulations wholly unrelated to the FLSA, are simply not probative on the issue of whether employees received the four-hour breaks which were deducted from their pay.  Neither Carr nor Robinson offered any first-hand *factual* testimony concerning the level of staffing on the weekends

16

in response to specific factual representations by the employees.  Moreover, Defendants did not submit testimony by house managers, employee work schedules, pay stubs, log books, or other documentary evidence which would provide actual factual support for their blanket denials.  As a consequence, the blanket denials are insufficient to rebut the employee testimony and evidence offered by Plaintiff.  *See Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-247 (4th Cir. 2005) (quoting 10B Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 3d § 2740, at 399 (1998)). (noting that Rule 56(e) of the Federal Rules of Civil Procedure requires that "affidavits submitted by the party defending against a summary-judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial'").

Lastly, Defendants seek to avoid summary judgment by impugning the credibility of the 34 employee declarants who testified as to Self Pride's FLSA violations.  To this end, Barbara Robinson declared:

> More than 85% of the people who have been employed by Self Pride, Inc., have come from housing projects, troubled homes, domestic abuse, drug and alcohol recovery and treatments centers; [*sic*] jail; and, prison.  A number of the people have been hustlers and thieves.  The turnover at Self Pride, Inc., is high because of the significant number of employees who are caught stealing or submitting false timesheets.

(B. Robinson Aff. § III ¶ 7.)  In a similar vein, at the June 2, 2005 hearing, Defendants' Counsel suggested that, if permitted to cross examine the declarants on the witness stand, he could impeach them all.  Despite these sweeping attacks on the character of the declarants, Defendants failed to offer a shred of  evidence which casts any doubt on the specific factual representations made by Self Pride's employees.  In addition, even if this Court were to credit the generalized attacks on the employees, summary judgment will still be appropriate on the issue of Self Pride's FLSA violations based solely

17

upon Self Pride's own documents, and upon the deposition testimony of Jerome and Barbara

Robinson, and Adolphus Carr.

Defendants have failed to present any genuine issue of material fact with respect to policies

which violated the overtime and record-keeping provisions of the FLSA.  Summary judgment must

therefore be entered in favor of Plaintiff as to those violations.  *See Bouchat v. Balt. Ravens Football*

*Club*, 346 F.3d 514, 526 (4th Cir. 2003) (noting that summary judgment is only overcome by "specific,

non-speculative evidence); *Abcor Corp. v. AM Int'l, Inc.,* 916 F.2d 924, 929 (4th Cir. 1990)

(recognizing that a party cannot create a genuine issue of fact through mere assertions); *Shin v.*

*Shalala,* 166 F. Supp. 2d 373, 375 (D. Md.  2001)(noting that a party cannot create a genuine dispute

of material fact through mere speculation or compilation of inferences).  Accordingly, Plaintiff's Motion

for Partial Summary Judgment will be granted as to those violations.

### B.    Wilfulness of Defendants' Violations

Plaintiff also seeks summary judgment on the issue of whether Defendants' violations were

"wilful" such as to trigger an exception to the two-year statute of limitations prescribed by the FLSA.

The FLSA provides that enforcement actions thereunder must be commenced within two years "except

that a cause of action arising out of a *wilful* violation may be commenced within three years after the

cause of action accrued." 29 U.S.C. § 255(a) (emphasis supplied).   Violations are willful if "the

employer either knew or showed reckless disregard for the matter of whether its conduct was

prohibited by the statute." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 128 (1985).

Plaintiff contends that knowledge can be imputed to Defendants in light of the fact that Self

Pride's employment practices were previously investigated.  For this proposition, Plaintiff relies

primarily on the holding of the United States Court of Appeals in *Herman v. Palo Group Foster Home, Inc.,* 183 F.3d 468, 474 (6th Cir. 1999).  However, that holding is inapposite.  In *Herman,* the Sixth Circuit affirmed the district court's grant of summary judgment on the issue of wilfulness in light of "corroborated and uncontested evidence" that the defendant was previously warned that its employment practices violated the FLSA.  *Id.* at 473.  The court emphasized the fact that the Department of Labor representatives had investigated the defendant several times, had informed the defendant of the precise violations of the FLSA, and had prescribed a remedy which could be employed by the defendant to avoid future violation.  *Id.*  Notwithstanding these warnings, the defendant continued the very practices against which he had been warned.  *Id.*  Based upon this "uncontradicted" evidence, the court affirmed the district court's finding that the defendant acted wilfully as a matter of law.  *Id.*

Contrastingly, in this case, there is no "undisputed" evidence that the Defendants were given specific warnings concerning FLSA violations which they failed to heed.  While Defendants acknowledge that Self Pride knew about the investigation conducted by James Kessler in 1998, the company denies that Kessler ever informed company executives of his findings or of any alleged violations of the FLSA by Self Pride.  (B. Robinson Aff. § III ¶ 1.)  Similarly, as to the 2001 investigation by John Sliwka, Barbara Robinson acknowledges that Sliwka informed her that Self Pride was violating overtime provisions of the FLSA (B. Robinson Aff. § III ¶ 2), however, she contends that he never "discussed specifics."  (*Id*.)  The record is also unclear as to whether Self Pride made some efforts to correct the violations after the company received the warning from Sliwka.  Based upon this conflicting evidence, there is at least a genuine issue of material fact as to whether Defendants' FLSA

violations were wilful.  As such, Plaintiff's Motion for Partial Summary Judgment will be denied as to

that issue.

C.      **Liquidated Damages**

The third issue on which Plaintiff moves for summary judgment is whether the affected Self

Pride employees are entitled to liquidated damages.  Generally, where a court finds that a defendant has

violated the FLSA, the affected employees are automatically entitled to liquidated damages under 29

U.S.C. § 216(b).[4]  However, a court may relieve the defendant-employer from liability for liquidated

damages if the employer demonstrates that the "act or omission giving rise to such action was in good

faith and that [the employer] had reasonable grounds for believing that [the employer's] act or omission

was not a violation of the [FLSA]."  29 U.S.C. § 260.   The Fourth Circuit has noted that the FLSA

places a "'plain and substantial burden' upon the employer to persuade the court that the 'failure to

obey the statute was both in good faith and predicated upon such reasonable grounds that it would be

unfair to impose upon him more than a compensatory verdict.'"  *Mayhew v. Wells,* 125 F.3d 216, 220

(4th Cir. 1997)(quoting *Brinkley-Obu v. Hughes Training, Inc.,* 36 F.3d 336, 357 (4th Cir.1994),

quoting in turn (quoting *Richard v. Marriott Corp.,* 549 F.2d 303, 306 (4th Cir.), *cert. denied,* 433

U.S. 915 (1977)).  As Judge Williams of this Court has observed, a defendant invoking the good faith

defense is required to establish by "'plain and substantial' evidence that it acted with subjective good

faith and objective reasonableness."  *Lockwood v. Prince George's County, Md. ,*58 F. Supp. 2d

---

[4]The FLSA specifically provides that: "Any employer who violates the provisions of section
206 or section 207 of this title shall be liable to the employee or employees affected in the amount of
their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an
additional equal amount as liquidated damages."  29 U.S.C.A. § 216(b).

651, 657 (D. Md. 1999) (citing *Richard, et al.,* 549 F.2d at 306).  Indeed, this burden is onerous, and

"'[d]ouble damages are the norm, single damages the exception....' " *Id.* (quoting *Brock v.*

*Wilamowsky,* 833 F.2d 11, 19 (2d Cir.1987) quoting in turn *Walton v. United Consumers Club,*

*Inc.,* 786 F.2d 303, 310 (7th Cir.1986)).[5]

In this case, Defendants did not assert the good faith defense, nor did they address the issue of

liquidated damages in their moving papers or in oral argument before this Court.   Moreover, the Court

finds no evidence in the record suggesting that Self Pride made any effort to ensure that its policies were

in compliance with the FLSA, even after it became aware of James Kessler's 1995 investigation.   Thus,

the Court finds that the affected employees are entitled to liquidated damages as a matter of law.  *See*

*Lockwood,* 58 F. Supp. 2d at 657 (granting summary judgment in favor of plaintiffs where defendant

presented no evidence of good faith or reliance upon agency guidance).   However, the amount of

damages is a matter which will be determined at trial.   Accordingly, Plaintiff's Motion for Partial

Summary Judgment will be granted as to the affected employees' entitlement to liquidated damages.

D.     **Personal Liability of Barbara A. Robinson**

Lastly, Plaintiff seeks summary judgment as to the personal liability of Defendant Barbara A.

Robinson as an "employer" under the FLSA.   Under 29 U.S.C. § 203(a), the term "'[e]mployer'

includes any person acting directly or indirectly in the interest of an employer in relation to an employee

. . . ."   At the hearing before this Court, Defendants' Counsel conceded that Barbara A. Robinson is

---

[5]  In addition, the good faith defense allows an employer to avoid liability if the employer acted
in good faith and in conformity with and reliance upon a written interpretation by a designated agency.
29 C.F.R. § 790.19(b).  There is no evidence that Self Pride sought such an interpretation in this case.

personally liable as an employer under FLSA.  There is no dispute that Barbara Robinson played a

primary role in virtually every aspect of Self Pride's operations, including virtually every aspect of

personnel. (*See generally,* B. Robinson Dep. at 19, 20, 24-25; B. Robinson Aff. § III ¶ 7.)

There is clear legal authority for the imposition of personal liability upon Ms. Robinson as an

employer.  It is well established that a corporate officer exercising the level of control exhibited by Ms.

Robinson in this case is liable as an "employer" for the FLSA violations of a corporation.  *See, e.g.*,

*Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668 (1st Cir. 1998) (corporate officers

may be held liable for civil monetary penalties pursuant to 29 U.S.C.A. §§ 216(e)); *Donovan v.

Agnew*, 712 F.2d 1509 (1st Cir. 1983) (officers personally liable for unpaid minimum and overtime

wages); *Lopez v. Silverman*, 14 F. Supp. 2d 405 (S.D. N.Y. 1998) (corporate president personally

liable for unpaid overtime to same extent as corporate employer); *Reich v. Circle C. Investments,

Inc.*, 998 F.2d 324, 329, 26 Fed. R. Serv. 3d 921 (5th Cir. 1993) (individual whose wife owned

nightclub was FLSA employer even though his consulting agreement excluded personnel matters from

his responsibilities, where he hired dancers, signed payroll checks, gave specific instructions to

employees, and spoke for club during labor secretary's investigation); *Donovan v. Grim Hotel Co.*,

747 F.2d 966, 971-972 (5th Cir. 1984) (corporate officer with no ownership interest held liable for

FLSA violations where he began and controlled corporation and guided policies); *Donovan v. Agnew*,

712 F.2d 1509, 1511 (1st Cir. 1983) (officers/directors actively involved in corporation's management,

including employee compensation and benefits, liable as employers without regard to degree of

ownership interest); *Donovan v. Sabine Irrigation Co., Inc.*, 695 F.2d 190, 194-195 (5th Cir. 1983)

(corporate officer with no ownership interest held to be "employer" where he exercised pervasive

control over business and financial affairs of corporation).  Additionally, an officer who is liable as an employer under the FLSA is liable in her individual capacity.  *See Donovan v. Grim Hotel Company,* 747 F.2d 966, 971 (5th Cir. 1984).

In light of the concession of Defense Counsel as to the status of Ms. Robinson, the undisputed evidence and the relevant legal authority, Plaintiff's Motion for Partial Summary Judgment will be granted as to Barbara Robinson's personal liability for Self Pride's FLSA violations.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is GRANTED with respect to the Defendants' liability for violations of the overtime provisions and record-keeping provisions of the FLSA, and is further GRANTED with respect to the Plaintiff's entitlement to liquidated damages, and the determination of Defendant Barbara A. Robinson as an employer under the FLSA.  Plaintiff's Motion is DENIED with respect to a determination that Defendants' violations of the FLSA were wilful.  A separate Order follows.

June 14, 2005                                    /s/_____
                                                 Richard D. Bennett
                                                 United States District Judge